JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACHARY GURZENSKI, an individual, on behalf of himself and all other similarly situated non-exempt current and former employees,<br><br>Plaintiff,<br><br>v.<br><br>DELTA AIR LINES, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:21-cv-05959-AB (JEMx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND** |

Plaintiff Zachary Gurzenski ("Plaintiff") filed a Complaint ("Compl.," Dkt. No. 2-1) in Los Angeles County Superior Court alleging that Defendant Delta Airlines, Inc. ("Defendant") violated various California labor laws. *Id*. Defendant removed the action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). Now before the Court is Plaintiff's Motion to Remand. ("Motion," Dkt. No. 15.) Defendant filed an Opposition and Plaintiff filed a Reply. (Dkt. Nos. 16, 17.) For the following reasons, the Court **GRANTS** Plaintiff's Motion.

**I.      BACKGROUND**

Plaintiff was employed by Defendant as a non-exempt Ramp Agent, and seeks to represent a class of all current and former Ramp Agents at any of Defendant's

1

locations at Los Angeles International Airport ("LAX") during the class period. *See* Compl. ¶¶ 6, 14. According to Plaintiff, Defendant violated California labor law because it "routinely required [Class Members] to purchase and use their own mandatory personal protective equipment, mandatory safety equipment and tools, and personal cell phone data and minutes as a direct consequence of the discharge of their employment duties." *Id.* ¶ 14. Defendant did not compensate Class Members for this equipment. The equipment Class Members purchased for themselves consisted of protective steel-toed boots, safety vests, earmuffs, marshaling wands, and knee pads. *Id.* ¶¶ 15, 19. Defendant also required Class Members to use their personal cell phones for work purposes and did not compensate them for this. *Id.* ¶¶ 22-23.

Based on these allegations, the Complaint alleges the following three (3) causes of action: (1) Failure to Indemnify Employees for Necessary Expenditures Incurred in Discharge of Duties (Cal. Lab. Code § 2802); (2) Failure to Pay All Wages Due to Discharged and Quitting Employees (Cal. Lab. Code § 203); and (3) Unfair and Unlawful Business Practices (Cal. Bus. & Prof. Code § 17200, *et seq.*).

Plaintiff contends that he pled only these three claims to avoid passing CAFA's $5 million amount in controversy threshold. He argues that Defendant has not established that these three claims satisfy the threshold, contending that Defendant's estimate of about $5.1 million—barely surpassing CAFA's minimum—is inflated because it double-counts some damages and uses unreasonable assumptions.

**II.   LEGAL STANDARD**

A defendant may remove a civil action filed in state court to federal court when the federal district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). "A suit may be removed to federal court under 28 U.S.C. § 1441(a) only if it could have been brought there originally." *Sullivan v. First Affiliated Sec., Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987). The burden of establishing federal jurisdiction is on the party invoking it.

The Class Action Fairness Act ("CAFA") vests federal district courts with

original jurisdiction over class actions in which (1) the parties are minimally diverse, (2) the proposed class has more than 100 members, and (3) the total amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020–21 (9th Cir. 2007).

### III. DISCUSSION

The parties do not dispute that Plaintiff's class exceeds 100 members and that the parties are minimally diverse. The only dispute is whether the amount in controversy is satisfied: Plaintiff's Complaint alleges that "the amount in controversy for the aggregate claims of PLAINTIFF and the class he seeks to represent is under Five Million Dollars ($5,000,000.00)," Compl. ¶ 3, while Defendant contends that it exceeds $5 million.

**A. Removal and Remand Under CAFA**

A removing defendant bears the burden of establishing federal jurisdiction. *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). To meet this burden as to the amount in controversy, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014) (citing 28 U.S.C. § 1446(c)(2)(B)).

Only "when the plaintiff contests, or the court questions, the defendant's allegation" must the defendant submit evidence to establish the amount in controversy by a preponderance of the evidence. *Id.* at 89 (citing 28 U.S.C. § 1446(c)(2)(B)); *see Ibarra*, 775 F.3d at 1195. The Court should "treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits." *Willingham v. Morgan*, 395 U.S. 402, 407 n. 3 (1969); *see also Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) ("The district court did not err in construing Petsmart's opposition as an amendment to its notice of removal.").

The plaintiff may submit evidence to the contrary. *Ibarra*, 775 F.3d at 1198 (citing *Dart Cherokee*, 574 U.S. at 89). "The parties may submit evidence outside the

complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.' " *Id.* at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). Once "both sides submit proof [] the court then decides where the preponderance lies." *Ibarra*, 775 F.3d at 1198. "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* at 1197.

### B. Defendant Has Not Established By a Preponderance of The Evidence That The Amount in Controversy Exceeds $5,000,000.

As noted, the Complaint alleges that the amount in controversy does not exceed $5 million. In its Notice of Removal, Defendant estimates the amount in controversy to be at least $5,897,910. *See* NOR ¶ 57. In his Motion, Plaintiff explains why Defendant's estimate is inflated and calculates the amount to be about $3.6 million. *See* Mot. p. 22. In its Opposition, Defendant estimates an amount in controversy of $5,100,112, about $800,000 less than the amount alleged in the NOR. In his Reply, Plaintiff explains why even Defendant's $5,100,112 estimate is inflated. Both sides filed evidence to support their calculations. Having considered the arguments and evidence, the Court finds that Defendant has not satisfied its burden of proving by a preponderance of the evidence that the amount in controversy exceeds $5 million.

First, consistent with the above-referenced authorities, the Court will treat the Defendant's Notice of Removal to have been amended by, and to include the materials Defendant filed with, its Opposition. Accordingly, the Court will determine whether Defendant has carried its burden based on the Opposition's $5,100,112 estimate.

The only claims contributing to the amount in controversy are Plaintiff's claims for unreimbursed footwear, unreimbursed cell phone usage, waiting time penalties, and attorneys' fees. Because reasonable attorneys' fees are recoverable pursuant to Cal. Lab. Code § 2802 and Cal. Civ. Code § 1021.5, they must be included in the amount in controversy. *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th

Cir. 2018) (the amount in controversy includes "attorneys' fees awarded under fee shifting statutes"); *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (when "the law entitles [the plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy.").

Defendant estimates these amounts to be:

| Claim | Defendant's Estimated Amount in Controversy |
|---|---:|
| Expense Reimbursement for Footwear | $563,892.50 |
| Expense Reimbursement for Cell Phone | $2,404,978.20 |
| Waiting Time Penalties | $1,111,219.56 |
| Attorneys' Fees | $1,020,022.57 |
| **Total** | **$5,100,112.83** |

Plaintiff does not challenge Defendant's estimate for the waiting time penalties, but attacks aspects of all other calculations. Plaintiff's argument that Defendant has double-counted in its future damages calculations is not convincing so the Court rejects it. However, the Court finds that some of Defendant's key evidence is inconsistent and is plausibly refuted by Plaintiff's evidence, that Defendant's cell phone calculation relies on an unreasonable assumption, and that the attorneys' fee calculation is unreasonable. Applying more reasonable estimates yields an amount in controversy below $5 million. Therefore, Defendant has not met its burden to prove by a preponderance of the evidence that the amount in controversy is satisfied.

**1. Defendant May Have Overcounted the Number of Class Members.**

First, Defendant may have overcounted the number of class members, leading to an inflated damages calculation overall. Plaintiff limited the class to Ramp Agents at LAX. *See* Compl. ¶ 6. Defendant submitted the declarations of Kavya Ranabothu (Dkt. No. 19-3), a Data Analysis Specialist, and of Michael Trent (Dkt. No. 19-2),

5

General Manager of Resource Planning, to establish the number of class members. Ms. Ranabothu states that Defendant employed 1,098 Ramp Agents during the pre-suit class period, and that each worked an average of 2.6 years. *See* Ranabothu Decl. ¶ 4. Mr. Trent projected that the number of Ramp Agents over the next year would exceed the current number of 529, *see* Trent Decl. ¶ 3, but that Defendant's calculations for ongoing damages is based on just 529 Class Members.

Notably, however, Mr. Trent referred to Customer Service Agents ("CSAs") and Ramp Agents interchangeably: "I am familiar with . . . . headcount projections for hourly, non-exempt Customer Service Agents ('CSAs'), also known as Ramp Agents…". *See* Trent Decl. ¶ 3. But according to Plaintiff, the category of employees called "Customer Service Agents" is not synonymous with Ramp Agents, but instead is a broader category that also includes Ticket and Gate Agents, Cargo Agents, and ACC/Tower Agents. *See* Gurzenski Decl. ¶ 4. Thus, according to Plaintiff, "Customer Service Agent" is a much broader category of employees than Ramp Agents. Plaintiff's declaration on this point is based on his personal experience applying for employment and during his employment, and it is credible.[1] Considering the three declarations, it is not clear whether Defendant's count of class members was properly limited to just Ramp Agents, or whether it was overinclusive because it included the broader category of Customer Service Agents generally. If the latter, then Defendant included a significant number of employees who are not putative class members, and that certainly inflated the amount in controversy calculations to the point that they are unreliable. *See Miller v. A-1 Express Delivery Servs., Inc.*, 2017 WL 462406, at *5 (N.D. Cal. Feb. 3, 2017) (remanding case because defendant "based its amount in controversy calculations on an incorrect class definition"). Furthermore, "[t]he

---

[1] The Court credits only Plaintiff's assertion that "Customer Service Agent" includes categories beyond just Ramp Agents, not his further observation that only about 25% of CSAs are Ramp Agents. *See* Gurzenski Decl. ¶¶ 7. For purposes of this inquiry, it suffices to conclude, as the Court does here, that it is unclear whether Defendant's class count is significantly overinclusive.

uncertainty regarding the number of putative class members affects the entirety of the amount in controversy calculations." *Id.* Because Defendant's own evidence as to who they counted is unclear, the Court cannot find that any of the resulting calculations are sufficiently reliable. This alone forecloses Defendant from satisfying its burden of establishing the amount in controversy by a preponderance of the evidence.

### 2. The Cell Phone Calculation Depends on Unreasonable Assumptions.

Defendant calculates that the cell phone reimbursement claim puts $2,404,978.20 in issue. To get this amount, Defendant (1) estimated the average monthly cost of a cell phone, (2) assumed that 75% of an employee's cell phone usage was for work, and then (3) multiplied both of the above by the number of months worked. The Court considers the first two parts of this calculation.

To estimate the average monthly cost of a cell phone, Defendant asserts that the average cost of a cell phone is $580; that people replace them every 36 months on average so the monthly phone cost is ($580/36 months) = **$16**; and that the average monthly cell phone plan costs **$60**. This yields a monthly cell phone cost of:

**$16 monthly phone cost + $60 monthly plan price = $76**. The Court finds that these numbers are reasonable and are based on reliable market-based evidence filed with the opposition. *See* Frederick Decl. (Dkt. No. 19-1).

But the second number—the percentage of class members' cell phone usage that was for work—is not reasonable. Defendant assumed that "75% of putative class member's total cell phone usage was attributable to the performance of their duties." Opp'n 13:4-8.[2] Defendant argues that the Complaint's allegations that class "members 'routinely' use 'personal cell phone data and minutes' for work-related purposes, *see* Compl. ¶ 14, support the assumption that 75% of each putative class member's total cell phone usage was attributable to the performance of their duties with Delta." *See* Opp'n 12:10-14. But it is a stretch to find that "routine" accounts for 75% of

---

[2] 75% of $76 monthly cell phone cost is $57, which puts in controversy $57 per month worked as a Ramp Agent.

something. "[A] damages assessment may require a chain of reasoning that includes assumptions . . . [but] those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Ibarra*, 775 F.3d at 1199. By Defendant's estimate, only 25% of class members' cell phone usage—whether on or off the clock—was for non-work-related purposes. This is not a reasonable assumption. Plaintiff attests that 50% of his cell phone usage is attributable to work duties. *See* Gurzinski Decl. ¶ 2. This rate is supported by at least some evidence—Plaintiff's declaration—and is more reasonable than Defendant's 75% estimate. Applying a 50% usage rate, but accepting all of Defendant's other facts and assumptions, reduces Defendant's estimated amount in controversy for this claim by about 1/3, or $801,659. As a result, the cell phone claim puts $1,603,318.8 in issue. Given that Defendant calculated a total amount in controversy of only $5.1 million, this $801,659 reduction in the cell phone damages would reduce the amount in controversy to about $4.3 million—well below CAFA's $5 million threshold.

### 3. Defendant's Attorneys' Fee Calculation is Inflated and Unreasonable.

Defendant calculated the amount put in controversy by the claim for attorneys' fees using the 25% benchmark that applies to common fund class action settlements. This yields $1,020,022.57. This is not a reasonable estimate of the amount in controversy for the attorneys' fees claim in this case.

The Ninth Circuit has provided some guidance for estimating attorneys' fees for purposes of calculating the amount in controversy in CAFA cases. The Circuit has observed that "district courts have developed expertise in determining 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate' when awarding attorneys' fees under a statute . . . authorizing recovery of 'reasonable attorneys' fees' at the close of litigation." *Fritsch*, 899 F.3d at 795. The Circuit similarly declined to adopt a per se rule that "the amount of attorneys' fees in controversy in class actions is 25 percent of all other alleged recovery" because "a court's calculation of future attorneys' fees is limited by the applicable contractual or

1  statutory requirements that allow fee-shifting in the first place." *Id.* at 796.

2  District courts sometimes do use the 25% benchmark to estimate the amount
3  put in controversy by attorneys' fee shifting statutes. But the Court finds that that
4  approach does not make sense here.

5  First, because the amount in controversy includes all amounts a plaintiff would
6  be entitled to if she prevailed, attorneys' fees are part of the amount in controversy
7  when they are "awarded under fee-shifting statutes . . . ." *Id.* at 793. Given that
8  attorneys' fees count towards the amount in controversy when they are recoverable
9  pursuant to a fee-shifting statute, it makes sense to estimate the attorneys' fee for
10 amount-in-controversy purposes *in the same manner* that it would be calculated under
11 the fee-shifting statute upon a noticed motion for fees at the close of litigation. In
12 California, courts use the lodestar method to calculate attorneys' fees. *Ketchum v.*
13 *Moses,* 24 Cal. 4th 1122, 1132 (2001). The lodestar figure is "calculated by
14 multiplying the number of hours the prevailing party reasonably expended on the
15 litigation by a reasonable hourly rate." *See Candle v. Bristow Optical Co. Inc.,* 224
16 F.3d 1014, 1028 (9th Cir. 2000). By contrast, the 25% benchmark that Defendant
17 espouses is used in a completely different context: to award attorneys' fees in class
18 action settlements, regardless of whether the underlying claims involve fee-shifting. In
19 class action settlements, the attorneys' fee is simply a portion of the common fund
20 recovered for the class; it is not a function of a fee-shifting statute and is not an
21 additional amount to which a prevailing plaintiff is entitled to be paid by the
22 defendant. Thus, while using the 25% benchmark might make for a straight-forward
23 calculation, it comes from a very different context.

24 Second, and importantly, the 25% benchmark from the class action settlement
25 context is not a suitable proxy for estimating the amount put in controversy by the
26 attorneys' fee claim in this fee-shifting case. Estimating the attorneys' fee by applying
27 the 25% benchmark from the settlement context to the total amount in controversy
28 will usually overstate the fee award *plausibly* recoverable pursuant to a fee-shifting

statute. This is because cases usually settle for significantly *less* than the entire amount in controversy calculated at the outset of the case based on all claims in issue. In the Court's experience, a settlement for less than the amount in controversy is especially likely in wage and hour cases like this one. In addition, in this Court's experience adjudicating class action settlement fee motions, the 25% benchmark (or similar percentage) applied in class action settlements often represents some *multiplier* of the lodestar, so the 25% benchmark cannot be considered a reasonable proxy for the lodestar for purposes of estimating the amount in controversy. For all of these reasons, applying the 25% benchmark from the class action settlement context to the entire amount in controversy would substantially overestimate the attorneys' fee recoverable under the fee-shifting statutes here, so that approach is unreasonable. For the same reasons, the Court rejects Defendant's argument that the Court should look to the percentage that Plaintiff's counsel has previously sought in the class action settlement context to determine the amount put in controversy by the statutory fee-shifting provisions here.

The Court therefore finds that using the lodestar method (rather than the 25% benchmark) to estimate the amount in controversy for the attorneys' fee claim makes most sense in this statutory fee-shifting case.

Defendant presented no evidence of what a lodestar fee would be. Plaintiff presented evidence that counsel could spend up to 1,000 on a class action case. *See* Savoy Decl. ¶ 8. This amount of time seems generous for case like this, but the Court accepts it. At counsel's $650 hourly rate, *id.* at ¶ 6, the maximum lodestar is $650,000. Even accepting all of Defendant's other calculations as correct, a $650,000 attorneys' fee would yield a total amount in controversy of only $4,730,090.26. This amount is below CAFA's $5 million threshold. The Court therefore finds that the amount in controversy is not satisfied and this case must be remanded.

## IV. CONCLUSION

Each of the above three faults in Defendant's estimate of the amount in controversy independently causes the amount in controversy to fall below CAFA's $5 million threshold. Accordingly, Defendant has not met its burden of establishing by a preponderance of the evidence that that threshold is satisfied. Accordingly, the Court lacks subject matter jurisdiction over this case. The Court **GRANTS** Plaintiff's Motion to Remand and **ORDERS** the Clerk of Court to remand this matter to Los Angeles County Superior Court.

**IT IS SO ORDERED.**

Dated: November 12, 2021

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE